UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
VW CREDIT, INC., doing business as
Audi Financial Services, doing business as
Bentley Financial Services,

         Plaintiff,     **MEMORANDUM & ORDER**

    - against -       10-CV-4515 (DRH) (WDW)

BARBARA ROBERTSON and HOWARD
ROBERTSON,

         Defendants.
----------------------------------X

**APPEARANCES:**

**GARUBO & BONSIGNORE, ESQS.**
Attorneys for Plaintiff
333 West 39th Street, Suite 604
New York, New York 10018
By: Robert T. Bonsignore, Esq.

**BARBARA ROBERTSON, PRO SE**
**HOWARD ROBERTSON, PRO SE**
164 Rhododendron Drive
Westbury, New York 11590

**HURLEY, District Judge:**

   Plaintiff VW Credit, Inc., doing business as Audi Financial Services and Bentley Financial Services ("Plaintiff" or "VW Credit") commenced this replevin action against pro se defendants Barbara and Howard Robertson (collectively, "Defendants" or "the Robertsons"), seeking to take possession of one used 2007 Bentley Continental GT convertible. Plaintiff also asserts causes of action for conversion and unjust enrichment. By Order to Show Cause filed on October 4, 2010, Plaintiff seeks a Temporary Restraining Order and Order of Seizure of Property pursuant to Federal Rule of Civil Procedure 64. For the reasons set forth below, Plaintiff's

application is denied.

## BACKGROUND

### *The Contract Between Plaintiff and LaMotte*

On or about October 22, 2009, non-party Donna Mendes-LaMotte ("LaMotte"), a resident of New Jersey, purchased a used 2007 Bentley Continental GT convertible bearing vehicle identification number ("VIN") SCBDR33W57C044516 (the "Vehicle") from non-party seller Champion Motor Group ("Champion"). (Compl. ¶ 5.) In conjunction with her purchase of the Vehicle, LaMotte executed a contract (the "Contract") in favor of Champion. According to the Contract, the total purchase price of the Vehicle was $142,857.50. (*Id.* ¶ 6.) LaMotte made a down payment of $13,000, which left an unpaid balance of $129,857.50. (*Id.*) The unpaid balance, plus associated fees, resulted in a total financed amount of $130,432.50. (*Id.*) The Contract required LaMotte to make sixty monthly payments, each in the amount of $2,551.45, beginning on November 21, 2009. (*Id.*) LaMotte's compliance with her payment obligations under the Contract was secured by the Vehicle. (Compl., Ex. A at 2 ("You give us a security interest in [t]he [V]ehicle and all parts or goods installed in it."); Aff. of Brad Malm, dated Sept. 30, 2010 ("Malm Aff.") ¶ 6.) On the same day the Contract was executed, Champion assigned all of its rights under the Contract to Bentley Financial Services, a division of Plaintiff. (Compl. ¶ 7.)

The Contract contains, *inter alia*, a provision pursuant to which LaMotte agreed not to "sell, rent, lease, or transfer any interest in the [Vehicle] or this contract without [Plaintiff's] written permission." (Compl. Ex. A at 2.) The Contract also states that in the event of a default

by LaMotte, Plaintiff "may take (repossess) the [Vehicle] from [LaMotte] if . . . the law allows it." (*Id.*)

*The Certificate of Title*

The Vehicle is listed on a certificate of title, issued from the State of New Jersey and dated November 24, 2009 (the "Certificate of Title"). (Compl., Ex. B.) The Certificate of Title identified LaMotte as the titled owner of the Vehicle and Bentley Financial Services as a lienholder. (*Id.*)

*Defendants Take Possession of the Vehicle*

Defendants assert that during the time period in question, they "were in the market for a 2005 Bentley Continental GT, which sells in the low $60,000.00 range." (State Compl. ¶ 3.)[1] Defendants contend that non-party Paul Silva ("Silva") told them that he "and his business partners," non-parties Michael Sender ("Sender") and Bentley of Long Island, could sell the Robertsons a 2007 Bentley Continental GTC for $68,500.00. (*Id.*) On September 28, 2009, the Robertsons test drove and inspected a used 2007 Bentley Continental GTC, VIN # SCBDR33WX7C04931 (the "Test Drive Vehicle"), which Silva and Sender brought to their residence. (*Id.* ¶ 4.) According to Defendants, Sender represented himself as an employee of Bentley of Long Island. (*Id.*) Sender drove the Test Drive Vehicle to the Robertsons' house and demonstrated the car's various features. (*Id.*) The Robertsons assert that "Sender's

---

[1] As discussed *infra*, on March 18, 2010, the Robertsons initiated an action in New York Supreme Court, Nassau County against several entities that are not parties to the instant action. Plaintiff attached a copy of the Robertsons' complaint in that state court action to its November 22, 2010 letter as Exhibit A. All references to the Robertsons' complaint in the state court action will be cited as "State Compl. ¶ __.

3

involvement" – presumably, as an employee of Bentley of Long Island – "legitimized the deal." (*Id.*)  In addition, Defendants describe Silva as a "friend of the family for over thirty years," who previously sold the Robertsons a 1994 Jaguar convertible, and sold other vehicles to the Robertsons' family and friends without incident.  (Defs.' Nov. 9, 2010 Letter at 1.)  Accordingly, Defendants tendered $25,000.00 to Silva as a down payment towards the Test Drive Vehicle's $68,500.00 purchase price.  (State Compl. ¶ 3.)  Three days later, on October 1, 2009, Defendants tendered the remaining $43,500.00 to Silva.  (*Id.* ¶ 5.)

On October 27, 2009 Silva informed the Robertsons that the Test Drive Vehicle "had mechanical problems."  (*Id.* ¶ 6.)  Accordingly, Silva delivered the Vehicle – which was the subject of the Contract between LaMotte and Plaintiff, as described above – to the Robertsons instead of the Test Drive Vehicle.  (*Id.*)  According to Defendants, the "N.Y.S. in-transit permit [for the Vehicle] originated from the dealership of [ ] Bentley of Long Island."  (*Id.*)  The Robertsons admit that they "were never issued title" to the Vehicle and, indeed, have not been able to obtain title to date.  (*Id.*; *see also* Ans. ¶ 7.)  They contend, however, that Silva told them "that the title was at the DMV in Long Island City" and that "Silva claimed that he had tax credits that were being applied, thereby exempting the [Robertsons] of the tax liability."  (State Compl. ¶ 7.)  Subsequently, the Robertsons made "numerous" attempts to obtain title to the Vehicle, which were ultimately unsuccessful.  (*Id.* ¶ 8.)

Defendants allege that LaMotte "utilized her credit to purchase four cars and authorized her cousin (Paul Silva) to sell or flip the cars for a profit on her behalf.  The Defendants purchased [the Vehicle] and were never informed that a lien existed."  (Ans. ¶ 5.)

4

*LaMotte's Alleged Default Under the Contract*

Plaintiff contends that, in violation of the Contract, the Vehicle was "improperly (i) sold, rented, leased, or transferred without the written consent of [Plaintiff] to the Robertsons and/or (ii) exposed . . . to misuse, seizure, confiscation, or involuntary transfer to the Robertsons. (Malm Aff. ¶ 14.) Plaintiff further contends that LaMotte has "failed to make payments as promised under the Contract and is in default of her obligations and indebtedness owed under the Contract to VW Credit, as of September 28, 2010, in an amount exceeding $128,000.00." (*Id.* ¶ 15.)

*Plaintiff's Attempts to Perfect its Security Interest in the Vehicle*

Plaintiff asserts that on the same day the Robertsons took possession of the Vehicle, October 27, 2009, Plaintiff "provid[ed] various documents to its agent for titling with the Motor Vehicle Commission of the State of New Jersey." (Pl.'s Nov. 22, 2010 Letter at 2.) These documents are described in detail, *infra*. Plaintiff claims that it "perfected its first priority security interest/lien in, to, and against the [ ] Vehicle by recording its lien on the certificate of title for the [ ] Vehicle with the Motor Vehicle Commission for the State of New Jersey." (Pl.'s Nov. 3, 2010 Letter at 1.) Ever since Defendants took delivery of the Vehicle on October 27, 2009, however, Defendants have retained possession of the Vehicle despite Plaintiff's requests for them to forfeit it.

**The State Court Action**

On or about March 18, 2010, the Robertsons commenced an action in New York State Supreme Court, Nassau County (the "State Court Action") against Silva, Sender, LaMotte, and

"Champion Motor Group dba Bentley of Long Island." (*See* State Compl.) The Robertsons claim that Silva "is now attempting to extort [the Robertsons] by stating that he will not relinquish the title unless [the Robertsons] participate" in a fraudulent scheme with him. (*See id.* ¶ 9.) The Robertsons assert a breach of contract claim against the defendants in the State Court Action, and seek damages in the amount of $68,500. (*See id.* ¶ 14.)

## PROCEDURAL BACKGROUND

Plaintiff commenced the instant action on October 4, 2010 by filing a complaint and, simultaneously, the instant motion seeking an Order to Show Cause, Temporary Restraining Order and Order of Seizure. A show cause hearing was held on November 12, 2010, in advance of which the parties filed multiple letter briefs in support of various aspects of their respective positions. Following the show cause hearing, at the direction of the Court, the parties filed supplemental written submissions. The Court has considered each of these submissions as well as the cited case law and statutes.

## DISCUSSION

I. **Legal Standard**

   A. *Order Of Seizure*

Rule 64(a) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a]t the commencement of and throughout any action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Thus, Article 71 of the New York Civil Procedure Law and Rules ("CPLR"), which governs the recovery of chattel located in New York, is applicable to this

proceeding. *See Southland Corp. v. Froelich*, 41 F. Supp. 2d 227, 248 (E.D.N.Y. 1999). New York CPLR § 7101 provides that "[a]n action under this article may be brought to try the right to possession of a chattel." New York CPLR § 7102(d)(1) states that "[u]pon presentation of the affidavit [described in § 7102(c)] and undertaking and upon finding that it is probable the plaintiff will succeed on the merits and the facts are as stated in the affidavit, the court may grant an order [of seizure]."

B. *Temporary Restraining Order*

To obtain a temporary restraining order, the movant must make "a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *see also Rispler v. Sol Spitz Co., Inc. Ret. Trust*, 2011 WL 43239, at *1 (E.D.N.Y. Jan. 6, 2011) (citing *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004)).

II. *Plaintiff has not Established That it is Entitled to an Order of Seizure*

New York CPLR § 7102(c) provides in relevant part:

> The application for an order of seizure shall be supported by an affidavit which shall clearly identify the chattel to be seized and shall state:
>
> > 1. that the plaintiff is entitled to possession by virtue of facts set forth;
> >
> > 2. that the chattel is wrongfully held by the defendant named;

> 3. whether an action to recover the chattel has been commenced, the defendants served, whether they are in default, and, if they have appeared, where papers may be served upon them;
>
> 4. the value of each chattel or class of chattels claimed, or the aggregate value of all chattels claimed; . . .
>
> [and] 6. that no defense to the claim is known to the plaintiff . . . .[2]

### A. Plaintiff has met the Affidavit Requirement of NY CPLR § 7102(c)

In support of its application, Plaintiff submitted an affidavit of Brad Malm ("Malm"), an Asset Resolution Supervisor for Plaintiff. Malm states that: (1) the Vehicle was sold to LaMotte for $142,857.50; (2) Defendants are in unlawful possession of the Vehicle because it was improperly transferred from LaMotte to Defendants without Plaintiff's written consent; and (3) Plaintiff is entitled to possession of the Vehicle by virtue of the Contract entered into by LaMotte which allows for Plaintiff to recover the Vehicle in the event of default. (Malm Aff. at ¶¶ 4, 10-11.) Accordingly, Malm's affidavit complies with CPLR § 7102(c).

### B. Plaintiff has Failed to Show a Probability of Success on the Merits

In addition to "presentation of the affidavit" described in CPLR § 7102(c), however, Plaintiff must also establish "that it is probable the plaintiff will succeed on the merits." NY CPLR § 7102(d)(1). "To establish a cause of action under Article 71, a plaintiff must show that

---

[2] The fifth element of an application for an order of seizure, not at issue here, comes into play only when the plaintiff "seeks the inclusion in the order of seizure of a provision authorizing the sheriff to break open, enter and search for the chattel." NY CPLR § 7102(c)(5). Likewise, the seventh element, also inapplicable here, deals with a plaintiff seeking an ex parte order of seizure. *Id.* § 7102(c)(7).

it has an immediate and superior right to possession of the goods." *Southland Corp.*, 41 F. Supp. 2d at 248-49. In this regard, Plaintiff claims to have perfected a security interest in the Vehicle, as set forth *infra*, pursuant to the New Jersey Motor Vehicle Certificate of Ownership Law on October 27, 2009, the same date on which Defendants took possession of the Vehicle.

### 1. New Jersey Law Governs Plaintiff's Attempt to Perfect its Security Interest in the Vehicle

As noted above, the Contract gave Plaintiff a security interest in the Vehicle. (*See* Compl., Ex. A at 2.) Plaintiff asserts, and the Court agrees, that New Jersey law applies to determine whether and when Plaintiff perfected its security interest in the Vehicle. The Uniform Commercial Code, as codified in New Jersey, provides that: "Except as otherwise provided in this section, while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral." N.J.S.A. 12A:9-301(1) (West 2002). Thus, because LaMotte, as the debtor to Plaintiff, is domiciled in New Jersey and because the Certificate of Title for the Vehicle was issued from New Jersey (*see* Compl., Ex. B), the law of that state controls. *See also* N.J.S.A. 12A:9-303(c) ("The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title."). New Jersey state law controls even though the Vehicle ultimately made its way to the Robertsons' home in New York. *See* N.Y. Veh. & Traf. Law § 2118(c) (McKinney 2001) ("If a vehicle is

9

subject to a security interest when brought into this state, the validity of the security interest is determined by the law of the jurisdiction where the vehicle was when the security interest attached . . . .").

The applicable provision of the New Jersey Motor Vehicle Certificate of Ownership Law provides as follows:

> The notation of the name and business or residence address of a secured party or his assignee, on the certificate of origin or on the certificate of ownership, as provided in R.S. 39:10-8 and R.S. 39:10-9, and the presentation to the director, in accordance with R.S. 39:10-11, of the certificate of origin or certificate of ownership so noted, and the compliance with the requirements of subsections C. and D. of R.S. 39:10-11 shall be in lieu of all filing requirements imposed by chapter 9 of Title 12A of the New Jersey Statutes and shall constitute the perfection of a security interest in the motor vehicle, and the rights and remedies of the debtors and the secured parties in respect to such security interest shall, except as otherwise expressly provided in this chapter, be subject to and governed by chapter 9 of Title 12A of the New Jersey Statutes.

N.J.S.A. 39:10-11(J). In short, perfection of a security interest in a used motor vehicle "consists of (1) the notation of the secured party on the certificate of ownership in accordance with N.J.S.A. 39:10-9; and (2) the presentation to the director of the certificate so noted 'in accordance with section 39:10-11.'" *Muir v. Jefferson Credit Corp.*, 262 A.2d 33, 35 (N.J. Super. Ct. Law Div. 1970). N.J.S.A. 39:10-9 requires that "if, in connection with [the sale of a used motor vehicle], a security interest is taken or retained by the seller to secure all or a part of the purchase price of the motor vehicle, . . . the name and the business or residence address of the secured part or his assignee shall be noted on the certificate of ownership." There is no question that, as of November 24, 2009, the name of address for Bentley Financial Services was noted on

10

the Vehicle's Certificate of Ownership. (*See* Compl., Ex. B.) That date, however, post-dates the day on which Defendants took possession of the Vehicle by almost one month.

> **2. The Documentation Submitted is Insufficient to Establish That Plaintiff Perfected its Security Interest Before Defendants Took Possession of the Vehicle**

Plaintiff claims that on October 27, 2009 (the same date on which Defendants took possession of the Vehicle), Plaintiff "caused its security interest in the [Vehicle] to be perfected by providing various documents to its agent for titling with the Motor Vehicle Commission of the State of New Jersey." (Pl.'s Nov. 22, 2010 Letter at 2.) Plaintiff attached the referenced "various documents" as Exhibit B to its November 22, 2010 Letter. They include: (1) a New Jersey Motor Vehicles Commission "Application For Certificate Of Ownership," which notes the Vehicle's model year, color, body type, VIN number, and mileage, and identifies the lienholder as Bentley Financial Services and the owner as LaMotte. The document appears to have been signed by LaMotte, but is undated. (Pl.'s Nov. 22, 2010 Letter, Ex. B at 1-2); (2) a New York State Department of Motor Vehicles "In-Transit Permit/Title Application," which states the "Date Issued" as October 27, 2009. (*Id.* at 3.) The form describes the Vehicle's make, model, and VIN number and lists LaMotte as the owner and Bentley Financial Services as lienholder. (*Id.*); and (3) a New York Department of Motor Vehicle Retail Certificate of Sale No. 34837794, which lists the Vehicle's make, model and VIN number. (*Id.* at 4.) The document identifies the "Dealer" as "Champion Motor Group dba Bentley Long Island" and the "Purchaser" as LaMotte, and the "Date of Sale" is listed as October 27, 2009. (*Id.*) A representative of the dealer and LaMotte signed the document on October 27, 2009.

Based on the documents submitted, the Court cannot determine whether Plaintiff perfected its security interest in the Vehicle prior to November 24, 2009 – the date listed on the Certificate of Title. There has been no authority presented to support an argument that the documents proffered by Plaintiff – in some cases unsigned, undated, and/or issued by the New York State Department of Motor Vehicles – are sufficient evidence of when Plaintiff perfected its security interest in the Vehicle, pursuant to the requirements set forth in N.J.S.A. 39:10-11. Because the Court cannot determine whether Plaintiff perfected its security interest as of October 27, 2009, the date on which Defendants took possession of the Vehicle, the Court cannot conclude that it is probable that Plaintiff will succeed on the merits by establishing its priority based on the perfection of its security interest.

If Plaintiff did not, in fact, perfect their security interest in the Vehicle at the time the Robertsons paid for and took delivery of the Vehicle, the Court would have to determine the respective rights of Plaintiff (as holder of an unperfected security interest in the Vehicle) and the Robertsons (as subsequent purchasers of the Vehicle). As the New Jersey Motor Vehicle Act does not appear to expressly provide for such a determination, the Court must turn to the Uniform Commercial Code, *see Muir*, 262 A.2d at 36, which provides: "Except as otherwise provided in subsection (e), a buyer, other than a secured party, of tangible chattel paper, documents, goods, instruments, or a security certificate takes free of a security interest or an agricultural lien if the buyer gives value and receives delivery of the collateral without knowledge of the security interest or agricultural lien and before it is perfected." N.J.S.A. 12A:9-317(b). Thus, if Plaintiff had only an unperfected security interest in the Vehicle as of October

12

27, 2009 – the date on which Defendants allegedly paid $68,500 for and took possession of the Vehicle – Plaintiff may not have a priority interest over Defendants.

In addition, because the Court cannot determine whether Plaintiff perfected its security interest in the Vehicle as of October 27, 2009, it need not address Defendants' alternate arguments that they are protected as: (1) "buyers in the ordinary course of business" under UCC Section 9-320(a),[3] see Muir, 262 A.2d at 36 ("The Code does extend certain persons rights superior to those of a party whose prior security interest has a perfected status."); or (2) "good faith purchasers for value" under UCC Section 2-403(1).[4]

### IV.  *Plaintiff's Motion For A Temporary Restraining Order Is Denied*

As stated above, in order for a Court to grant a temporary restraining order, the movant must show irreparable harm as well as either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. In addition to the difficulties Plaintiff has at this point with demonstrating a likelihood of success on the merits, the Court finds that Plaintiff has not sufficiently shown that failure to issue a temporary restraining order will cause irreparable harm.

---

[3] Section 9-320 provides: "Except as otherwise provided in subsection (e), a buyer in ordinary course of business, other than a person buying farm products from a person engaged in farming operations, takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." N.J.S.A. 12A:9-320(a).

[4] Section 2-403(1) provides, in part, that "[a] person with voidable title has power to transfer a good title to a good faith purchaser for value." N.J.S.A. 12A:2-403(1).

Plaintiff contends that "[d]ue to the intrinsic nature of the [ ] Vehicle – e.g., inherently mobile and can easily be concealed and transported out of the jurisdiction of this Court," sufficient cause exists for the "immediate issuance" of a temporary restraining order. (Pl.'s Mot. ¶ 7.) The Court notes, however, that this is not a case where "remedies available at law, such as monetary damages, are inadequate to compensate [Plaintiff]." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (internal quotation marks omitted) (quoting *ebay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Although the Vehicle is a high-end luxury automobile, Plaintiff has not set forth any evidence to show that monetary damages would not adequately compensate Plaintiff if necessary.

Accordingly, Plaintiff's motion for a temporary restraining order is denied

**V.**   ***Defendants' Request to Stay the Action Pending the Outcome of the State Court Action is Denied Without Prejudice and With the Right to Renew***

In their Answer, Defendants request the Court stay this action pending the resolution of the State Court Action. (Ans. at 2.) "The decision as to whether to stay a federal action on the ground that there is a related action pending in a state court is committed to the sound discretion of the district court." *United States v. Pikna*, 880 F.2d 1578, 1582 (2d Cir. 1989). In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976), the Supreme Court held that "the doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Thus, "a district court may abstain in order to conserve federal judicial resources in exceptional circumstances, where the resolution of existing concurrent state-court litigation could result in comprehensive

14

disposition of litigation." *Nieves v. Bd. of Educ.*, 2006 WL 2989004, at *2 (E.D.N.Y. Sept. 15, 2006) (citing *Woodford v. Cmty. Action Agency of Greene Cnty.*, 239 F.3d 517, 522 (2d Cir. 2001)).

"[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 117-18 (2d Cir. 1998). The Court notes that Plaintiff VW Credit is not a named defendant in the State Court Action. "However, abstention under *Colorado River* does not require identical parties in the federal and state proceedings." *Nieves*, 2006 WL 2989004 at *2. An analysis of "whether abstention is appropriate generally turns on several factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Salomon v. Burr Manor Estates, Inc.*, 635 F. Supp. 2d 196, 201 (E.D.N.Y. 2009) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983)). These factors include: "(1) the inconvenience of the federal forum; (2) the avoidance of piecemeal litigation; (3) the order in which jurisdiction was obtained by the concurrent forums; (4) whether state or federal law supplies the rule of decision; and (5) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction." *Id.* at 201 (citing *Moses H. Cone*, 460 U.S. at 15-27; *Colorado River*, 424 U.S. at 818). "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16. The Supreme Court has "emphasize[d] that [the] task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado*

*River* to justify the *surrender* of that jurisdiction." *Id.* at 25-26.

Here, neither party has addressed any of the factors set forth above, nor has the Court been presented with any arguments or citations to legal authority in support of either party's position. Moreover, although pro se Defendants requested a stay of this action in their Answer, they have not repeated this request in any subsequent correspondence to the Court. Accordingly, because it is not clear whether Defendants still maintain this request, and if so, what the parties' respective positions are on this issue, the Court declines to address the merits of Defendants' request without the benefit of further input from the parties. Should Defendants wish to renew their request to stay this action, they are hereby granted leave to make such a motion by May 23, 2011.

## *CONCLUSION*

For the reasons set forth above, Plaintiff's Order to Show Cause is denied in its entirety.

Counsel for Plaintiff is directed to serve a copy of this Memorandum and Order upon pro se Defendants forthwith and file proof of service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
      May 2, 2011

                                            /s/
                                            Denis R. Hurley
                                            Senior District Judge