UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
VW CREDIT, INC.,

                            Plaintiff,              **MEMORANDUM AND ORDER**
                                                                        10 CV 4515 (DRH) (SIL)

    - against -

BARBARA ROBERTSON and HOWARD
ROBERTSON,

                            Defendants.
-----------------------------------------------------------X
**APPEARANCES:**

**FINANCIAL CREDIT INC.**
Attorneys for Plaintiff
333 West 39th Street, Suite 604
New York, NY 10018
By:    Robert T. Bonsignore, Esq.

**PRO SE**
Defendants Barbara Robertson and
Howard Robertson
164 Rhododendron Drive
Westbury, NY 11590


**HURLEY, Senior District Judge:**

       VW Credit, Inc. ("plaintiff") commenced this replevin action against Howard and Barbara Robertson ("defendants" or "the Robertsons") seeking to take possession of a used 2007 Bentley Continental GT convertible ("the Vehicle"). Plaintiff also asserts causes of action for conversion and unjust enrichment. Presently before the Court are defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56, seeking dismissal of plaintiff's claims in their entirety and plaintiff's cross motion for summary judgment. For the reasons that follow, defendant's motion is denied and plaintiff's motion is denied.

## BACKGROUND

Both parties agree that the factual and procedural background of this matter is set forth in the Memorandum and Order entered by this Court on May 2, 2011. (Pl.'s Mem. in Opp'n at 1; Defs.' Reply at 1.) For the sake of brevity the Court incorporates by reference the background discussion set forth in that Order.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. &*

*Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, on conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The district court, in considering a summary judgment motion, must also be mindful of the underlying burdens of proof because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the" non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to present sufficient evidence in support of his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

II. *The Summary Judgment Motions*

Both the Robertsons and VW Credit argue that there is no genuine issue of material fact

that they are entitled to possession of the Vehicle. Defendants argue that they are entitled to the Vehicle because they purchased it from Paul Silva ("Silva") prior to plaintiff perfecting its security interest in the Vehicle on November 24, 2009. Pursuant to N.J.S.A. 12A:9-317(b), "[e]xcept as otherwise provided in subsection (e), a buyer, other than a secured party, of tangible chattel paper, tangible documents, goods, instruments, or a certificated security takes free of a security interest or agricultural lien if the buyer gives value and receives delivery of the collateral without knowledge of the security interest or agricultural lien and before it is perfected." [1] According to that statute, if plaintiff perfected its security interest prior to defendants' purchase, plaintiff would have a right to the Vehicle over the defendants. Therefore, the Court will first analyze whether plaintiff perfected its security interest in the Vehicle and if so, when that perfection occurred.

As discussed in the Court's Order of May 2, 2011, perfection of a security interest in a used motor vehicle "consists of (1) the notation of the secured party on the certificate of ownership in accordance with N.J.S.A. 39:10-9; and (2) the presentation to the director of the certificate so noted 'in accordance with section 39:10-11.' " *Muir v. Jefferson Credit Corp.*, 262 A.2d 33, 35 (N.J. Super. Ct. Law Div. 1970). N.J.S.A. 39:10-9 requires that "if, in connection with [the sale of a used motor vehicle], a security interest is taken or retained by the seller to secure all or a part of the purchase price of the motor vehicle, . . . the name and the business or residence address of the secured party or his assignee shall be noted on the certificate of ownership." In its Local Rule 56.1 Statement, plaintiff acknowledges that it perfected its security interest in the Vehicle on November 24, 2009 by recording its lien on the corresponding certificate of title (the "Title) that

---

[1] As discussed in the Court's Order of May 2, 2011, since the debtor, Donna Mendes-LaMotte ("Lamotte"), is located in New Jersey, the law of New Jersey, "governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral." Order of May 2, 2011 at 9 (citing N.J.S.A. 12A:9-301(1)).

was issued by the Motor Vehicle Commission for the State of New Jersey. (Pl.'s R. 56.1 Stmt. ¶ 2.) Plaintiff does not argue that it perfected its interest at any earlier date. Since November 24, 2009 post-dates the day on which defendants took possession of the Vehicle and tendered payment by almost one month, plaintiff is not entitled to the Vehicle by virtue of a perfected security interest.

Plaintiff argues, however, that the Robertsons cannot retain possession of the Vehicle because they never acquired title to the Vehicle. Under N.J.S.A. 12A:2-403, "[a] purchaser of goods acquires all title which the transferor had or had power to transfer," however, "[a] person with voidable title has power to transfer a good title to a good faith purchaser for value." N.J.S.A. 12A:2-403(1).[2] Initially, plaintiff argues that the Robertsons do not have title to the vehicle because Silva, as the transferor, did not have authority from Donna Mendes-LaMotte ("LaMotte") to transfer title. Plaintiff cites in support of this position the affidavit of LaMotte where she states that she "never authorized any person or entity to sell the Bentley nor to act as my agent in this regard." (LaMotte Affidavit ¶¶ 8-9.) Defendants, however, draw the Court's attention to documents filed in plaintiff's state court action[3] against LaMotte which create an issue of fact as to whether LaMotte and Silva were involved in a larger scheme by virtue of which LaMotte did authorize Silva to sell the Vehicle to defendants. For example, in response to interrogatories from plaintiff, LaMotte admitted that she "allowed Silva to use her name to acquire vehicles for sale."

---

[2] Both parties cite to N.J.S.A. 12A:2-403 although the purchasers in this instance were the Robertsons, residents of New York who purchased the Vehicle in New York. Should New York law apply in determining whether defendants took title to the Vehicle, however, McKinney's Consolidated Laws of New York § 2-403(1) contains the same provision as N.J.S.A. 12A:2-403(1).

[3] In the New Jersey state court action, plaintiff brought claims of breach of contract, unjust enrichment, conversion, and fraud against LaMotte.

(Defs.' Ex. C.) In addition, when asked to "[i]dentify . . . each and every person that was involved in any way relative to performance and payment of the obligations and indebtedness owed under" LaMotte's contract for the Vehicle, LaMotte responded, "Paul Silva." (Defs.' Ex. D.) The Robertsons also submit an email from Ronald LaMotte, Donna LaMotte's husband, suggesting that LaMotte financed cars for Silva, including the Vehicle at issue. (Defs.' Ex. I.) As a result, it remains a question of fact whether Silva had the power to transfer title to the Vehicle.

Moreover, even assuming Silva and/or LaMotte had voidable title and were capable of transferring good title to a good faith purchaser for value,[4] whether defendants were good faith purchasers is also a question of fact. Plaintiff argues that the defendants did not act in good faith because they did not question Silva "about any one of the several peculiarities surrounding their transaction," particularly that "Silva unilaterally switched the Test Drive Vehicle and delivered the Vehicle" instead. (Pl.'s Mem. in Opp'n at 9). In addition, plaintiff argues that the Robertsons should have "insisted on reviewing the Title or other legal documents." (*Id*.)[5] Moreover, plaintiff also asserts that good faith "would have required Defendants to undertake more due diligence" given that defendants paid only $68,500.00 for the Vehicle, which had been sold to LaMotte only five days prior for $142,857.50. (*Id*. at 14.)

The Robertsons, however, respond that they rightly relied on Silva, who "had been a friend of the family for over thirty years" and had sold vehicles to their families and close friends and had

---

[4] Neither party addresses whether Silva and/or LaMotte as transferor had "voidable title" to the Vehicle.

[5] Plaintiff relies primarily on a New York Appellate Division case where the court held that plaintiff did not purchase a used vehicle in good faith because he did not inspect "the records of title and prior ownership to the vehicle" prior to purchasing the vehicle "especially in light of the fact that the vehicle did not have dealer plates, but private ones." *Kaminsky v. Karmin*, 187 A.D.2d 488, 489-90 (2d Dep't 1992).

a "stellar reputation and track record with regards to selling cars." (Defs.' Reply at unnumbered p. 10; *see also* Pl.'s Ex. L, affidavits from individuals who purchased cars from Silva.) In addition, defendants, claim that the purchase price did not alert them to Silva's fraud because at the time of their purchase they understood that Bentley Continental GTs "sell[] in the low $60,000.00 range" and they also submit a listing from the website "cars.com" which demonstrates that in December of 2010 at least 10 used Bentley Continental GTs made in years 2004 or 2005 were being sold at prices ranging from $61,880 to $69,800. (Compl. ¶ 3; Defs.' Ex. K.) Based on this evidence, defendants have raised an issue of fact as to whether they acted in good faith when purchasing the Vehicle. As a result, the Court cannot determine at this stage whether plaintiff or defendants is entitled to the Vehicle.[6]

---

[6] The Court has considered plaintiff's argument that defendants do not have legal title to the Vehicle because under both New York and New Jersey law, (neither party asserts whether New York or New Jersey law should apply in this context) defendants were required to take possession of "the Title for the Vehicle or comparable legal documents." (Pl.'s Mem. in Opp'n at 7.) The New Jersey state cases that plaintiff cites in support of its position, however, all deal with disputes regarding the ownership of a vehicle for insurance coverage purposes and are part of a line of cases beginning with *Eggerding v. Bicknell*, 20 N.J. 106 (1955) where the court held that "in order to effectively transfer title to a motor vehicle *for insurance purposes*, there must be strict compliance with the statutory directions." *Velkers v. Glen Falls Insurance Co.*, 226 A.2d 448, 457 (N. J. Super. Ct. Ch. Div. 1967) (emphasis added). Moreover, plaintiff has not cited any authority convincing the Court that defendants' failure to obtain the certificate of title precludes them from retaining the Vehicle in this context.

## *CONCLUSION*

For the reasons set forth above, both plaintiff's motion for summary judgment and the defendants' cross-motion for summary judgment are denied.

**SO ORDERED.**

Dated: Central Islip, New York
August 25, 2014

/s/
Denis R. Hurley
Unites States District Judge